# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

SIDNEY CHARLES,

                Petitioner,

vs.

UNITED STATES OF AMERICA,

                Respondent.

No. C12-4068-MWB
No. CR10-4083-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
PETITIONER'S § 2255 MOTION**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION AND BACKGROUND**.............................................. 2
    A.    *Criminal Case Proceedings* ................................................. 2
    B.    *The Petitioner's § 2255 Motion* ....................................... 10

II.   **LEGAL ANALSYIS** ........................................................... 12
    A.    *Standards For § 2255 Motion* ......................................... 12
    B.    *Procedural Matters* ....................................................... 15
        1.    *Preliminary matters* .......................................... 15
        2.    *Procedural default* ............................................ 15
    C.    *Ineffective Assistance Of Counsel* ................................... 16
        1.    *Applicable standards* ........................................ 16
            a.    *Strickland's "deficient performance" prong* ............... 18
            b.    *Strickland's "prejudice" prong* ............................ 20
        2.    *Failure to investigate Charles's mental health* ..................... 21
    D.    *Certificate Of Appealability* ........................................... 26

III.   **CONCLUSION** ................................................................ 27

# I.    INTRODUCTION AND BACKGROUND

This case is before me on petitioner Sidney Charles's Second Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody.    Charles asserts that his counsel provided him with ineffective assistance in failing to adequately investigate his mental health and intelligence.    The respondent denies that Charles is entitled to relief on his claim.

## A.    Criminal Case Proceedings

On December 14, 2010, a fourteen-count Superseding Indictment was returned against Charles and four co-defendants, charging him with conspiracy to distribute 50 grams or more of crack cocaine, having previously been convicted of a felony drug offense (Count 1), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851, distributing and aiding and abetting another in the distribution of crack cocaine within 1000 feet of a public playground or school, having previously been convicted of a felony drug offense (Counts 4 and 5), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 860(a), and 18 U.S.C. § 2, possessing crack cocaine with intent to distribute within 1000 feet of a public playground or school, having previously been convicted of a felony drug offense (Count 13) , in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 851, and 860(a), and possessing crack cocaine with intent to distribute, having previously been convicted of a felony drug offense (Count 14), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851.

On January 31, 2011, Charles appeared before Chief United States Magistrate Judge Paul A. Zoss to enter a guilty plea.  There was no plea agreement.   During the plea hearing, Judge Zoss explained the charges to Charles and then asked Charles if he understood the charges:

| | |
|---|---|
| THE COURT: | Mr. Charles, do you understand what you've been charged with in this case? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | Have you had a chance to talk with Mr. McGough as much as you want about the charges? |
| THE DEFENDANT: | Yes, I have. |
| THE COURT: | Mr. McGough, do you believe your client understands the charges against him? |
| MR. MCGOUGH: | I do, Your Honor. |

Plea Tr. at 3.

Judge Zoss next inquired into Charles's mental health:

| | |
|---|---|
| THE COURT: | Have you ever suffered from depression, anxiety, or any other mental illness? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | What – what – which one of those things have you had? |
| THE DEFENDANT: | I was taking – I was on medication, Pro – Prozac. |
| THE COURT: | You were on Prozac? |
| THE DEFENDANT: | And Lexapro. |
| THE COURT: | Was that for depression? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | How are you feeling today? |
| THE DEFENDANT: | All right. |

| | |
|---|---|
| THE COURT: | Are you – are you taking the medication at all now? |
| THE DEFENDANT: | I ain't taking the medication.  I been locked up. |
| THE COURT: | Do you have – do you feel you have any physical or mental problems today that might make it hard for you to understand the matters, the things we're going to be talking about here today? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Mr.  McGough, do you believe your client is competent to plead guilty? |
| Mr.  MCGOUGH: | I do. |

Plea Tr. at 4-5.

After describing the jury trial process to Charles, Judge Zoss asked:  "Do you understand what I've said so far?" Plea. Tr. at 8.  Charles responded: "Yes, sir." Plea Tr. at 8.  After explaining the rights he would be giving up by pleading guilty, Judge Zoss asked:  "If you plead guilty, you'll be found guilty based upon your guilty pleas just as if you'd gone to trial and a jury found you guilty.  Do you have any questions about your rights?" Plea Tr. at 10.  Charles answered: "No, I don't." Plea Tr. at 10. Judge Zoss then asked:  "Do you understand if you plead guilty you will not have a jury trial or any other trial?"  Plea Tr. at 10.  Charles answered:  "Yes, I do." Plea Tr. at 10.

Judge Zoss went on to make the following inquiries concerning the elements of the crime:

| | |
|---|---|
| THE COURT: | The first question I'm just asking you was was there at least two |

|                  |                                                                                                                                                                                                                                                                   |
|------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                  | people during the time period that were working together under an agreement to distribute some crack cocaine here in Sioux City.                                                                                                                                   |
| THE DEFENDANT:   | Yeah.                                                                                                                                                                                                                                                              |
| THE COURT:       | Okay. The second thing the government would have to prove is that you became a member of this conspiracy at some point while it was up and running, while it was – while this conspiracy was distributing crack cocaine, that you became a member yourself and that you did so voluntarily and intentionally. So let me ask you, did you become a member of this conspiracy to distribute crack cocaine? |
| THE DEFENDANT:   | Yeah.                                                                                                                                                                                                                                                              |
| THE COURT:       | And did you do so voluntarily, in other words, without anybody forcing you to join? Did you join voluntarily?                                                                                                                                                      |
| THE DEFENDANT:   | Yeah.                                                                                                                                                                                                                                                              |

Plea. Tr. at 13-14.

Judge Zoss then asked Charles if he joined the conspiracy intentionally. Charles answer that he joined the conspiracy by "[a]ccident." Plea Tr. at 14. This exchange led to the following colloquy between Judge Zoss and Charles:

|                  |                                                                                                                          |
|------------------|--------------------------------------------------------------------------------------------------------------------------|
| THE COURT:       | Explain – explain what you mean by that.                                                                                  |
| THE DEFENDANT:   | Accident mean, in other words, I was (inaudible). I was three months behind in my rent, my                               |

|                  |                                                                                                 |
|------------------|-------------------------------------------------------------------------------------------------|
|                  | bill. I (inaudible), so I needed some money to try and pay my bill, so I know this dude from Omaha. I went to him to buy some crack from him to pay my bill. Then I got caught up. So I guilty. |
| THE COURT:       | Did you – I know you went to – I hear you saying you did what in Omaha? |
| THE DEFENDANT:   | Went bought some crack cocaine. |
| THE COURT:       | You did what with crack cocaine? |
| MR. MCGOUGH:     | He bought some crack cocaine. |
| THE COURT:       | He bought some crack cocaine in Omaha. To sell here in Sioux City? |
| THE DEFENDANT:   | Yes, sir. |
| THE COURT:       | And you did that to pay your rent? |
| THE DEFENDANT:   | Yes, sir. |
| THE COURT:       | And did you buy it from other people that are in this conspiracy? |
| THE DEFENDANT:   | Only one person in the conspiracy. |

Plea Tr. at 15.

Judge Zoss went on to review with Charles the elements of the other charges. Charles admitted to each of the elements of the other charges. Plea Tr. at 22-32. After reviewing the statutory penalties with Charles, Judge Zoss asked: "Do you have any questions about the statutory penalties?" Charles answered: "No, sir." Plea Tr. at 36.

Judge Zoss then went on to discuss the sentencing guidelines with Charles. During this discussion, Judge Zoss asked:

> So, for example, if the range ends up being 262 to 327 months, Judge Bennett could look at that and decide the right sentence for you is within that range, or he could decide the appropriate sentence for you is 200 months or 350 months. He could do something outside the range and depart or vary to something outside the range. Do you understand that?

Plea Tr. at 40. Charles answered: "Yeah." Plea Tr. at 41.

During the rest of the hearing, Judge Zoss explained about the mandatory minimum 120 month sentence Charles was subject to, Charles's inability to withdraw his guilty plea, and the prosecution's promise not to seek an upward departure. In response to questions from Judge Zoss, Charles stated that he understood each of these circumstances. Judge Zoss followed up with the following colloquy:

| THE COURT: | You don't have to plead guilty. You still have the right to plead not guilty. Do you have any questions about anything we've discussed here today? |
|---|---|
| THE DEFEDNANT: | No, sir. |
| THE COURT: | Do you still want to plead guilty? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Are you pleading guilty of your own free will? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And are you pleading guilty because you are, in fact, guilty of these charges? |
| THE DEFENDANT: | Yes, sir. |

Plea Tr. at 44. At the conclusion of the hearing, Charles entered a plea of guilty to Counts 1, 4, 5, 13, and 14 of the Superseding Indictment.

A probation officer then prepared a presentence report ("PSR"). The PSR indicated that Charles's total offense level was 34. PSR at ¶ 56. The PSR also indicated that Charles had 24 criminal history points, for his multiple convictions, which included convictions for automobile theft, burglary, forgery, assaults, domestic assaults, driving under the influence, possession of cocaine, possessing cocaine with intent to deliver, interference with official acts, going armed with intent, assaulting law enforcement officers, and theft.[1] PSR at ¶ 99. Charles's 24 criminal history points placed him in criminal history category VI. *Id.* The PSR further indicated that Charles qualified as a career offender. *Id.* Charles's career offender status also placed him in criminal history category VI. *Id.* The PSR also detailed the following information about Charles's mental health:

> 130. On March 21, 2006, the defendant participated in a psychological evaluation with Dr. Whitehill with the Iowa Department of Corrections; however, the report was determined to be invalid due to the defendant's responses to the questions.
>
> 131. On September 29, 2006, Dawn Nolan, PA-C, with Siouxland Mental Health Services in Sioux City, Iowa, met with the defendant at the Woodbury County Jail. The defendant was diagnosed with Major Depressive Disorder, recurrent episode, severe degree, specified as w/psychotic behavior and prescribed Risperdal and Lexapro. At the end of their meeting, the defendant began having seizure activity and was taken by ambulance to a hospital. Additional information is unknown.

---

[1] Respondent informally agreed not to seek an upward departure for substantial underrepresentation of criminal history. Sentencing Tr. at 3-5.

. . . .

> 133. On October 2, 2009, the defendant met with Dawn Nolan, PA-C, with Siouxland Mental Health Services in Sioux City, Iowa, where he participated in a psychiatric medical evaluation. The defendant reported he had been off his medications since release from prison in March 2009, and was feeling depressed and stressed as well as losing sleep. Since the defendant had last been seen by Dawn Nolan in September 2006, he had been treated in the Iowa Correctional System, where he was prescribed: Lexapro, Risperdal, and Trazodone. He reported the combination of medications had worked well for him. The defendant was diagnosed with Major Depressive Disorder, recurrent episode, severe degree, w/o mention of psychotic behavior. He was again prescribed: Lexapro, Risperdal, and Trazodone. The defendant attended follow-up appointments with Dawn Nolan in November and December 2009.

PSR at ¶¶ 130-33.

On July 6, 2011, Charles filed his Motion for Downward Variance. Charles moved for a variance on two grounds. He requested that I either reject the implementation of the career offender guideline on policy grounds in this case, or vary from the guideline because a sentence within the career offender range would result in an unjust sentence. He also sought consideration for a variance based on the nature and circumstances of the criminal conduct, Charles's history and characteristics, and to avoid unwarranted sentencing disparities. In his brief filed in support of Charles's motion, Charles's counsel noted Charles's major depressive disorder diagnosis. Respondent resisted Charles's motion.

Charles appeared before me on July 31, 2011, for sentencing. I found that Charles's total offense level was 34, and that he had a criminal history category of VI. I also found that Charles's advisory United States Sentencing Guideline range was 262 to

327 months. I noted there was a statutory mandatory minimum sentence of ten years imprisonment. Neither Charles nor his counsel objected to my sentencing guideline calculations.

I then took up Charles's Motion for Downward Variance. In arguing for a downward variance, Charles's attorney specifically pointed out Charles's major depressive disorder diagnosis. Sentencing Tr. at 10. I denied Charles's motion. I explained that Charles's shocking criminal history with 39 total convictions, including 13 assault convictions and "3-other assault-related convictions," substantially outweighed any of the mitigating factors. Sentencing Tr. at 23-24. I sentenced Charles to 300 months imprisonment on each count, to be served concurrently, and eight years of supervised release on Count 1 and six years supervised release on Counts 4, 5, 13, and 14, all to run concurrently. Charles did not appeal.

## B. The Petitioner's § 2255 Motion

On July 13, 2012, Charles filed a pro se Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody. In his motion, Charles asserts a claim regarding application of the Career Offender and Fair Sentencing Act; a claim related to drug quantity; and a claim relating to his "mental capacity." Respondent did not file an answer to Charles's § 2255 motion, but, instead, filed a Motion to Dismiss. In its Motion To Dismiss, the respondent sought dismissal of all of Charles's claims for relief as procedurally defaulted. After the respondent filed its Motion To Dismiss, I directed the Clerk of Court to appoint counsel to represent Charles and directed Charles, with the aid of counsel, to respond to the respondent's Motion To Dismiss. Eventually, after extensions of time to do so, Charles, through counsel, filed, under seal, a Response To Motion To Dismiss Petitioner's Motion Under 28 U.S.C. § 2253 [sic] And Amended Motion. In his response, Charles agreed with the respondent that two of

his claims—his claim regarding application of the Career Offender and Fair Sentencing Act and his claim related to drug quantity—were procedurally defaulted, but he asserted that "[t]he issue of mental capacity is the gravamen of an allegation of ineffective assistance of counsel, an allegation providing 'cause and prejudice'" to avoid procedural default of the "mental capacity" claim.  Charles's Response at 1, ¶¶ 3-4.  In his accompanying brief, Charles appeared to assert that his "mental capacity" claim was amended to assert ineffective assistance of counsel in failing to pursue the "mental capacity" issue, so that procedural default of that claim was overcome and that claim survived the respondent's Motion To Dismiss.  Charles did not expressly request permission to amend, other than a somewhat obscure reference to "Amended Motion" in the caption of his response, nor did he offer a proposed Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody.  He did, however, append to his response numerous exhibits that he contended supported his "mental capacity" claim.  In its reply, the respondent asserted that, until Charles filed his response to its Motion to Dismiss, there was no hint that his "mental capacity" claim was, in any sense, a claim of ineffective assistance of counsel, and that any motion to amend Charles's § 2255 Motion was untimely, because it was not filed within 21 days of the respondent's Motion To Dismiss, as required by Rule 15 of the Federal Rules of Civil Procedure.  The respondent also argued that it did not consent to such an amendment and that I had not authorized such an amendment.  In a rejoinder filed without authorization, Charles asserted that his request to amend his § 2255 Motion was timely, by virtue of the original deadline I set for his response to the respondent's Motion To Dismiss, the extensions of his deadlines to respond to the respondent's Motion To Dismiss, and the respondent's agreement to such extensions.  Moreover, he argued that, because the respondent agreed to the extensions, the respondent was estopped from challenging the timeliness of the amendment.  In a Reply To Petitioner's Rejoinder, also

filed without any authorization, the respondent argued that there was no implicit extension of Charles's deadline to seek leave to amend by orders setting or extending a deadline for his response to a motion to dismiss or by the respondent's agreement to such extensions, and that Charles's counsel's attempt to amend Charles's § 2255 Motion was not in good faith.

On July 30, 2013, I granted in part and denied in part respondent's Motion to Dismiss. I concluded that, as Charles conceded, two of his § 2255 claims—a claim regarding application of the Career Offender and Fair Sentencing Act and a claim related to drug quantity—were procedurally defaulted. Therefore, I granted respondent's Motion to Dismiss those two claims. However, under the circumstances presented, I found that justice required that I grant Charles leave to amend his § 2255 Motion to reformulate his "mental capacity" claim as an "ineffective assistance" claim, which was clearly what his counsel was attempting to do, albeit inartfully.

Charles then sought, and was granted, two extensions of time in which to file his amended § 2255 motion. On August 15, 2013, Charles filed his amended § 2255 motion. In his amended motion, Charles asserts that his counsel provided him with ineffective assistance in failing to adequately investigate Charles's mental health and intelligence by seeking to review the file of his attorneys handling his application for Social Security disability benefits. Respondent filed a timely resistance to Charles's Amended § 2255 motion. Respondent denies that Charles is entitled to any relief on his ineffective assistance of counsel claim.

## II.    LEGAL ANALSYIS

### A.    Standards For § 2255 Motion

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established
> by Act of Congress claiming the right to be released upon the

> ground [1] that the sentence was imposed in violation of the
> Constitution or laws of the United States, or [2] that the court
> was without jurisdiction to impose such sentence, or [3] that
> the sentence was in excess of the maximum authorized by law,
> or [4] is otherwise subject to collateral attack, may move the
> court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255; *see Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)

("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post conviction relief

on the ground that his sentence was imposed in the absence of jurisdiction or in violation

of the Constitution or laws of the United States, was in excess of the maximum authorized

by law, or is otherwise subject to collateral attack."); *Bear Stops v. United States*, 339

F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must

demonstrate a violation of the Constitution or the laws of the United States."). Thus, a

motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in

scope to federal Habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir.

1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v.

United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*).

One "well established principle" of § 2255 law is that "'[i]ssues raised and decided

on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28

U.S.C. § 2255.'" *Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (quoting

*United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001)); *Bear Stops*, 339 F.3d at 780.

One exception to that principle arises when there is a "miscarriage of justice," although

the Eighth Circuit Court of Appeals has "recognized such an exception only when

petitioners have produced convincing new evidence of actual innocence," and the

Supreme Court has not extended the exception beyond situations involving actual

innocence. *Wiley*, 245 F.3d at 752 (citing cases, and also noting that "the Court has

emphasized the narrowness of the exception and has expressed its desire that it remain

13

'rare' and available only in the 'extraordinary case.'" (citations omitted)). Just as § 2255 may not be used to relitigate issues raised and decided on direct appeal, it also ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." *Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

"Cause and prejudice" to resuscitate a procedurally defaulted claim may include ineffective assistance of counsel, as defined by the *Strickland* test, discussed below. *Theus*, 611 F.3d at 449. Indeed, *Strickland* claims are not procedurally defaulted when brought for the first time pursuant to § 2255, because of the advantages of that form of proceeding for hearing such claims. *Massaro v. United States*, 538 U.S. 500 (2003). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). The "actual innocence" that may overcome either procedural default or allow relitigation of a claim that was raised and rejected on direct appeal is a demonstration "'that, in light of all the evidence, it is more likely than not that no reasonable juror would Have convicted [the petitioner].'" *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *Bousley*, 523 U.S. at 623); *see also House v. Bell*, 547 U.S. 518, 536-37 (2006). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the challenged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

With these standards in mind, I turn to analysis of Charles's claim for § 2255 relief.

## B.    Procedural Matters

### 1.    Preliminary matters

Even though ineffective assistance of counsel claims may be raised on a § 2255 motion, because of the advantages of that form of proceeding for hearing such claims, *see Massaro v. United States*, 538 U.S. 500, 509, that does not mean that an evidentiary hearing is required for every ineffective assistance claim presented in a § 2255 motion. A district court may not "grant a prisoner § 2255 relief without resolving outstanding factual disputes against the government." *Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001) (emphasis in original). Where a motion raises no disputed questions of fact, however, no hearing is required. *See United States v. Meyer*, 417 F.2d 1020, 1024 (8th Cir. 1969). In this case, I conclude that no evidentiary hearing is required on any issue because the motion and the record conclusively show that Charles is entitled to no relief.

### 2.    Procedural default

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993). "[C]ause and prejudice" to overcome such default may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel

are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Because I construe Charles's claim to be a claim of ineffective assistance of counsel, I will consider it on the merits.

## C.    *Ineffective Assistance Of Counsel*

### 1.    *Applicable standards*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops*, 339 F.3d at 780; *see also Steele v United States*, 518 F.3d 986, 988 (8th Cir. 2008). The Eighth Circuit Court of Appeals has recognized that, if a defendant was denied the effective assistance of counsel guaranteed by the Sixth Amendment, "then his sentence was imposed 'in violation of the Constitution,' . . . and he is entitled to relief" pursuant to § 2255(a). *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010). Both the Supreme Court and the Eighth Circuit Court of Appeals have expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because such a claim often involves facts outside of the original record. *See Massaro*, 538 U.S. at 504-05 (2003); *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

The Supreme Court has reiterated that "'the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland v. Washington*, 466 U.S.

668, 689 (1984)). That being the case, "'[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686, with emphasis added). To assess counsel's performance against this benchmark, the Supreme Court developed in *Strickland* a two-pronged test requiring the petitioner to show "both deficient performance by counsel and prejudice." *See Strickland*, 466 U.S. at 687-88, 697; *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009). "'Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.'" *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

Although the petitioner must prove both prongs of the *Strickland* analysis to prevail, the Supreme Court does not necessarily require consideration of both prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[2]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before analyzing Charles's claim.

### a. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland,* 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must

---

[2] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting Strickland, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at –––– , 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-

guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing Bell v. Cone, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### b.     *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

20

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

## 2. *Failure to investigate Charles's mental health*

Charles alleges that his trial counsel provided ineffective assistance by failing to investigate his history of mental health issues adequately. Charles asserts that information regarding his mental health was available from attorneys handling Charles's application for Social Security disability benefits. Charles argues that an evaluation of those records could have been used to mitigate Charles's criminal history by establishing a link between Charles's history of assaultive behavior and his depression. Respondent counters that Charles's history of depression was no secret. Charles's depression was addressed by Judge Zoss at the time of Charles's guilty plea and was specifically mentioned in the PSR. Respondent also notes that Charles's counsel was aware of Charles's history of depression and mentioned it in Charles's Motion for Downward Variance, but decided against focusing on that diagnosis at sentencing because he did not believe it would be a persuasive, mitigating argument against Charles's extensive criminal history. Instead, respondent contends that Charles's counsel believed it would be more persuasive to focus on Charles's age, his limited role and acceptance of responsibility, coupled with a policy argument against the Career Offender enhancement. Respondent argues that this was a strategic decision by Charles's counsel which is entitled to presumption of reasonableness. Respondent also argues that Charles cannot establish that he was prejudiced by his counsel's actions because he cannot establish that materials regarding his mental health existed in his Social Security file which would have been beneficial to him at sentencing.

"Evidence of . . . emotional disturbance is typically introduced by defendants in mitigation." *Hill v. Lockhart*, 28 F.3d 832, 844 (8th Cir. 1994) (citing *Eddings v.*

*Oklahoma*, 455 U.S. 104, 115 (1982)).  Counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary, in the context of a claim of ineffective assistance with regard to mental health experts. *See Kenley v. Armontrout*, 937 F.2d 1298, 1308 (8th Cir. 1991) ("[C]ounsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made.").  As I have previously stated, "[I]n the specific context of a claim of ineffective assistance of counsel relating to failure to investigate, prepare, and present expert testimony concerning mental health issues, the Eighth Circuit Court of Appeals has explained that the *Strickland* inquiry involves asking whether counsel conducted an adequate investigation and whether counsel's decision to refrain from further investigation and presentation of mental health mitigation evidence was reasonable." *Johnson v. United States*, 860 F. Supp. 2d 663, 878 (N.D. Iowa 2012) (quoting *Worthington v. Roper*, 631 F.3d 487, 500 (8th Cir. 2011)).  Counsel's performance may be found ineffective if he performs little or no investigation.  *See Kenley*, 937 F.2d at 1308 (counsel ineffective where "it was not a reasonable strategy that led counsel not to investigate, but lack of thoroughness and preparation.").  "Counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made." *Id.* at 1308 (citing *Chambers v. Armontrout*, 907 F.2d at 835).  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, at 690-691).

The record indicates that Charles's counsel was aware of Charles's history of depression by at least the time of Charles's guilty plea when Judge Zoss inquired into

Charles's mental health. See Plea Tr. at 4-5. The PSR subsequently noted the following information about Charles's mental health history:

> 130.  On March 21, 2006, the defendant participated in a psychological evaluation with Dr. Whitehill with the Iowa Department of Corrections; however, the report was determined to be invalid due to the defendant's responses to the questions.
>
> 131.  On September 29, 2006, Dawn Nolan, PA-C, with Siouxland Mental Health Services in Sioux City, Iowa, met with the defendant at the Woodbury County Jail. The defendant was diagnosed with Major Depressive Disorder, recurrent episode, severe degree, specified as w/psychotic behavior and prescribed Risperdal and Lexapro. At the end of their meeting, the defendant began having seizure activity and was taken by ambulance to a hospital. Additional information is unknown.
>
> . . . .
>
> 133.  On October 2, 2009, the defendant met with Dawn Nolan, PA-C, with Siouxland Mental Health Services in Sioux City, Iowa, where he participated in a psychiatric medical evaluation. The defendant reported he had been off his medications since release from prison in March 2009, and was feeling depressed and stressed as well as losing sleep. Since the defendant had last been seen by Dawn Nolan in September 2006, he had been treated in the Iowa Correctional System, where he was prescribed: Lexapro, Risperdal, and Trazodone. He reported the combination of medications had worked well for him. The defendant was diagnosed with Major Depressive Disorder, recurrent episode, severe degree, w/o mention of psychotic behavior. He was again prescribed: Lexapro, Risperdal, and Trazodone. The defendant attended follow-up appointments with Dawn Nolan in November and December 2009.

PSR at ¶¶ 130-34.  The PSR also pointed out that Charles was "awaiting approval for Social Security disability benefits."  PSR at ¶ 145.

Charles's counsel's affidavit indicates that he "was aware that [Charles] had been diagnosed with depression and was aware that [Charles] was represented by separate counsel regarding a social security claim." Atty. Aff. at ¶ 13.  Further, counsel explained that:

> I did not believe that any documents relating to that [Social Security] claim would be beneficial to [Charles's] arguments. At sentencing, the Court spent a considerable amount of time discussing his prior criminal record.  The fact that the Defendant had been diagnosed with depression in the past appeared in the PSR and was mentioned in my Brief in Support of Motion for Downward Variance.  I did not believe that any argument regarding a diagnosis for depression would benefit him.  Rather, I believed that focusing on his age, his limited role and acceptance of responsibility, as well as a policy argument against the Career Offender Guideline enhancement would be more persuasive.

Atty. Affidavit at ¶ 13.

The record in this case demonstrates that trial counsel made a decision not to present Charles's mental health issues as evidence without reviewing any of Charles's mental health records contained in his social security file.  Charles's counsel did not have a sufficient record upon which to make this allegedly strategic decision.  Without seeing Charles's prior mental health records contained in his social security file, counsel could not make an informed decision about how Charles's mental health issues would affect my decision regarding mitigation.  Therefore, I find that Charles's counsel performed deficiently by failing to adequately investigate Charles's mental health status prior to making a strategic decision to not present mental health evidence at Charles's sentencing hearing.

However, as discussed above, "'[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Gianakos,* 560 F.3d at 821 (quoting *Strickland,* 466 U.S. at 691). Charles makes two arguments with regard to prejudice. First, Charles contends that his counsel could have used his mental health records in his Social Security file to establish that he was not competent to plead guilty. Charles, however, does not point to any mental health records which would establish his incompetency, or give rise to a serious question about his competency to plead guilty. The record here certainly belies such a claim. Charles's counsel's affidavit indicates that there never was any indication that Charles did not understand the proceedings or the charges against him:

> I met with the Defendant numerous times. He was housed at several different jails due to behavioral problems. Each and every time I met with him, he appeared to understand our discussions, the nature of the charges against him and the evidence collected by the Government. At no time during any of my meetings did I ever get the impression that he did not understand the proceedings against him.

Atty. Aff. At ¶ 4. Charles's appropriate interaction with Judge Zoss at the plea hearing certainly indicate that Charles understood the charges he was facing. Likewise, Charles's conduct at sentencing gave no indication that he did not understand that proceeding. Therefore, I find that Charles has not established that there is a reasonable probability that, if his counsel had investigated Charles's mental health issues more fully, I would have found him incompetent when he entered his guilty plea or incompetent to proceed to sentencing.

Charles's second argument with regard to prejudice is that his counsel could have used his history of depression to establish a mitigating explanation for Charles's long criminal history of assault convictions. I find that Charles has not established that there is a reasonable probability that, if his counsel had investigated Charles's mental health

issues more fully, I would have had information regarding a possibly mitigating explanation for Charles's long history of assaultive crimes. Charles has identified no evidence that his depression affected his violent criminal conduct, or his conduct here. *See Strickland*, 466 U.S. at 694. The mental health records contained in Charles's Social Security file merely reveal Charles's history of depression. This history, however, was already before me in Charles's PSR and in his motion for downward variance, and was considered by me in determining Charles's sentence. Thus, I find that Charles has not established he was prejudiced by his counsel's failure to investigate his mental health issues. Since Charles cannot demonstrate he was prejudiced by his counsel's error, his claim of ineffective assistance of counsel fails.

### D. *Certificate Of Appealability*

Charles must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Charles's motion does not present questions of substance for appellate review, and

therefore, does not make the requisite showing to satisfy § 2253(c).  *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).  Accordingly, with respect to Charles's claim, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  Should Charles wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## III.    CONCLUSION

For the reasons discussed above, Charles's Motion under 28 U.S.C. § 2255 is denied in its entirety.  This case is dismissed.  No certificate of appealability will issue for any claim or contention in this case.

**IT IS SO ORDERED**.

**DATED** this 25th day of June, 2014.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA